IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY and SAFECO INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>CL CARSON, INC., CHRIS CARSON, KELLIE ANN CARSON, and STUART THOMAJAN,<br><br>    Defendants. | §§§§§§§§§§§§§<br><br>Civil Action No. 1:11-cv-00543 |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiffs, Liberty Mutual Insurance Company and Safeco Insurance Company (collectively, the "Surety"), complains of Defendants, CL Carson, Inc., Chris Carson, Kellie Ann Carson, Stuart Thomajan, and respectfully states:

### *Parties*

1. Liberty Mutual Insurance Company is a Massachusetts corporation that is authorized to do business in the State of Texas.

2. Safeco Insurance Company is a Washington corporation that is authorized to do business in the State of Texas.

3. Defendant CL Carson has been served with service of process through its registered agent, Chris Carson, at 15009 General Williamson Drive, Austin, Texas, 78734.

4. Defendant Chris Carson has been served with process at 15009 General Williamson Drive, Austin, Texas, 78734 and filed for Chapter 7 bankruptcy protection before making an appearance in this case.

5. Defendant Kellie Ann Carson has been served with process at 15009 General Williamson Drive, Austin, Texas, 78734 and filed for Chapter 7 bankruptcy protection before making an appearance in this case.

6. Defendant Stuart Thomajan is a Texas citizen and has been served with process at 826 Wagon Trail, Austin, Texas, 78758.

### *Statement of Jurisdiction*

7. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and cost.

### *Venue*

8. Venue is proper in this district under 28 U.S.C. § 1391 in that (a) the Defendants reside in this district in the State of Texas, (b) a substantial part of the events or omissions giving rise to the Surety's claim occurred in this district, and (c) the Defendants are subject to personal jurisdiction in this district at the commencement of this action and there is no district in which the action may otherwise be brought.

### *Factual Background*

9. The Surety issued performance and payment bonds on behalf of CL Carson ("CL Carson") in connection with multiple construction projects in the State of Texas. CL Carson was named as the principal on the bonds. The bonds issued by the Surety included the following (collectively, the "Bonds") for the following projects (collectively, the "Projects") and owners (collectively, the "Owners"):

| BOND NO. | PROJECT NAME | OWNER |
|---|---|---|
| 6347321 | Boone ES, Patton ES and Small MS – Card Access Security Systems Installation | Austin Independent School District |
| 6620989 | Eastside Memorial HS Renovations | Austin Independent School District |
|  |  |  |
| 6652930 | Hill ES Renovations | Austin Independent School District |
| 6652937 | Major Maintenance to the Brenham Readiness Center | Adjutant General's Department |
| 6670211 | Austin Convention Center Waller Creek Terrace Room Configuration | City of Austin |
| 6652980 | Travis High School Renovations | Austin Independent School District |
| 6670217 | Pleasant Hill ES and Pleasant Hill Annex | Austin Independent School District |
| 6670218 | EDC Improvements 2009 | Lake Travis Independent School District |
| 6670228 | Installation of Card – Access Security Systems and Door Repairs at Covington and Mendez | Austin Independent School District |
| ~~6670229~~ | ~~Installation of Card – Access Security Systems and Door Repairs at Houston and Rodriguez~~ | ~~Austin Independent School District~~ |
| 6670230 | HVAC Equipment Replacement | Austin Independent School District |
| 6697507 | District Wide Accessability | Del Valle Independent School District |
| 6697509 | Wells Branch and Forest Creek Elementary Schools Nurse Office Renovations | Round Rock Independent School District |
| 6697514 | Renovations to South Austin Community Care Clinic | Travis County Healthcare District d/b/a Central Health |

10. On or about April 9, 2007, to induce the Surety to issue the Bonds, CL Carson, Chris Carson, and Kellie Ann Carson executed a *General Agreement of Indemnity for Contractors* (the "Indemnity Agreement") in favor of the Surety for any and all loss or expense

the Surety incurred in connection with issuing the Bonds. A true and correct copy of the Indemnity Agreement is attached hereto as Exhibit "A" and fully incorporated herein for all purposes.

11. Stuart Thomajan executed a Signature Addendum in January 2009 that made him a party to the Indemnity Agreement. CL Carson, Chris Carson, Kellie Ann Carson, and Stuart Thomajan shall be collectively referred to in this Motion as the "Indemnitors." A true and correct copy of the Signature Addendum is attached hereto as Exhibit "B" and fully incorporated herein for all purposes.

12. The paragraph of the Indemnity Agreement, entitled *Indemnity to Surety*, provides, in pertinent part, the following:

Undersigned agree to pay to the Surety upon demand:

1. All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by I on account of any Default under this agreement by any of the Undersigned, or by reason of the refusal to execute any Bond. In addition, the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement.

2. An amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve thereof. Such payment to be the minimum amount of any reserve set by Surety. This sum may be used by Surety to pay such claim or demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law. The Undersigned confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.

3. Any original, additional or renewal premium due for any Bond.

13. To the extent the Surety makes any payments under the Bonds, the Indemnitors further agree in the Indemnity Agreement that "an itemized statement of loss and expenses

incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned".

14. On or about February 1, 2011, CL Carson ceased its business operations and began taking the necessary steps to close down (demobilize) the Projects. This resulted in demands being made by subcontractors and suppliers of CL Carson on the Surety for payment of unpaid balances under the payment bonds issued by the Surety on behalf of CL Carson.

15. As of the filing of this Third Amended Complaint, the Surety estimates a loss under the Bonds in excess of $400,000.

16. All conditions precedent to recovery by the Surety from the Indemnitors has occurred or has been performed.

### *Count I*

### *Breach of Indemnity Agreement*

17. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 16.

18. The Indemnitors have failed, delayed, refused, or are unable to pay bills or other indebtedness incurred in connection with the Projects for which the Bonds were issued.

19. Despite demand, the Indemnitors have failed and/or refused to pay the Surety an amount sufficient to discharge claims against the Surety from having issued the Bonds.

20. Under the Indemnity Agreement, the Indemnitors are jointly and severally liable to the Surety for all of the Surety's loss and expense, including attorney's fees, in connection with claims on the Bonds.

## Count II

### *Common Law Indemnity*

21. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 20.

22. The Surety has been called upon as a surety to pay for CL Carson's alleged defaults under the Bonds.

23. CL Carson benefitted from the Surety's posting of the Bonds, as CL Carson could not have performed the contracts for which the Bonds were issued without the Bonds.

24. Under the theories of common law indemnity, unjust enrichment, and restitution, the Surety is entitled to payment by CL Carson for all of the Surety's loss and expense resulting from issuance of the Bonds.

## Count III

### *Exoneration*

25. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 24.

26. The Indemnitors are jointly and severally liable to the Surety under the Indemnity Agreement for all amounts necessary to exonerate the Surety from liability asserted against it.

## Count IV

### *Collateralization/Quia Timet*

27. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 26.

28. The Indemnitors are jointly and severally liable to the Surety under the Indemnity Agreement for any amount of collateral necessary to cover all losses of the Surety under the Bonds.

## Count V

### *Specific Performance of Indemnity Agreement*

29. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 28.

30. The Surety requests that the Court compel the Indemnitors to provide the Surety with access to its books, records, and accounts and other documents identified in the Indemnity Agreement so that the Surety may determine any additional exposure under the Bonds.

31. The Surety also requests that the Court compel the Indemnitors to assign all its rights to payment of any contract balance, retainage, or other sum due under any construction contract bonded by the Surety pursuant to the provisions of the Indemnity Agreement.

## Count VI

### *Recovery of Attorneys' Fees and Expenses*

32. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 31.

33. The Surety is entitled to recover its attorneys' fees and expenses from the Indemnitors under the Indemnity Agreement.

34. Additionally, and alternatively, the Indemnitors are obligated to reimburse the Surety for its reasonable attorneys' fees incurred in the bringing of this complaint under § 38.001, *et seq.* of the Texas Civil Practice & Remedies Code.

### *Request for Relief*

For the foregoing reasons Plaintiff, Liberty Mutual Insurance Company, respectfully requests that CL Carson, Inc. and Stuart Thomajan be cited to appear and answer herein and, upon final trial thereof, that the Surety receive:

1. Judgment against CL Carson, Inc. and Stuart Thomajan jointly and severally, in the amount of damages incurred by the Surety;

2. Judgment against CL Carson, Inc. and Stuart Thomajan jointly and severally, for amounts necessary to exonerate the Surety from all liability asserted against it;

3. An Order of the Court compelling CL Carson, Inc. and Stuart Thomajan to perform their obligations under the Indemnity Agreement;

4. Attorneys' fees and expenses;

5. Pre-judgment and post judgment interest at the maximum permissible at law or in equity;

6. Costs of court;

7. Such other and further relief to which the Surety is justly entitled.

Respectfully submitted,

**LANGLEY WEINSTEIN LLP**


By: /s/ Gregory M. Weinstein
Gregory M. Weinstein
ATTORNEY IN CHARGE
Texas State Bar No. 21096430
Federal Bar No. 18131

600 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
214-722-7160
214-722-7161 (fax)
gweinstein@lwllp.com

ATTORNEYS FOR PLAINTIFF LIBERTY MUTUAL INSURANCE COMPANY

DCN:11200710113218604001080460   Received Date:10/11/2007



**GENERAL AGREEMENT
OF INDEMNITY
FOR CONTRACTORS**

Safeco Insurance Company
PO Box 34526
Seattle, WA 98124-1526

THIS AGREEMENT is made by the Undersigned in favor of the Safeco Insurance Companies for the purpose of indemnifying them from all loss and expense in connection with any Bonds for which any Safeco Insurance Company now is or hereafter becomes Surety for any of the following as Principal (hereinafter referred to as Contractor):   CL Carson, Inc. (a Texas Corporation)

_____

_____

In consideration of the execution of any such Bonds for Contractor and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows.

DEFINITIONS: Where they appear in this agreement, the following terms shall be considered as defined in this paragraph:

Contractor: Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interests, whether alone or in joint venture or as members in limited liability companies with others not named herein.

Bond: Any and all bonds, undertakings or instruments of guarantee and any continuation, extension, alteration, renewal or substitution thereof, whether with the same or different penalties, executed by Surety.

Surety: Any one or combination of the following:  Safeco Insurance Company of America; General Insurance Company of America; First National Insurance Company of America; Safeco National Insurance Company; American States Insurance Company; American Economy Insurance Company; any person or company joining with any of the aforesaid companies in executing any Bond, executing any Bond at their request or providing reinsurance to them with respect to any Bond and any subsidiaries, successors, and assigns thereof.

Contract: Any contract between Contractor and a third party, the performance of which is guaranteed by any Bond for which Surety is surety.

Default: Contractor shall be deemed to be in default under this agreement in the event it:

(1) Is declared to be in default by the Obligee of any Bond;
(2) Actually breaches or abandons any Contract;
(3) Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
(4) Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
(5) If an individual sole proprietor dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;
(6) Breaches, fails to perform, or comply with, any provision of this agreement.

INDEMNITY TO SURETY: Undersigned agree to pay to Surety upon demand:

1. All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned, or by reason of the refusal to execute any Bond.
In addition the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;
2. An amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefor. Such payment to be the minimum amount of any reserve set by Surety. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond. The Undersigned acknowledge that their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law. The Undersigned confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.
3. Any original, additional or renewal premium due for any Bond.

With respect to claims against Surety:

1. Surety shall have the exclusive right for itself and the Undersigned to determine in its sole and absolute discretion whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2. Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has issued any Bond.
3. Surety's determination in its sole and absolute discretion of the foregoing shall be final and conclusive upon the Undersigned.
4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.    SURETY

SURETY'S REMEDIES IN EVENT OF DEFAULT: In event of default by Contractor, Surety shall have the right, at its sole discretion, to:    SEP 2 7 2007

1. Take possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond;
2. Take possession of Contractor's or any of Undersigneds' equipment, materials and supplies at the site of the work, or elsewhere, if needed for prosecution of the work, as well as Contractor's office equipment, books and records, computer hardware and software, and utilize the same in completion of the work under the Contract without payment of any rental for such use;
3. Loan or guarantee a loan to Contractor of such money as Surety shall see fit, for the purpose of completing any Contract, or for discharging Contractor's obligations for labor, material, equipment, supplies and other charges, or discharging Surety's liability under any Bond, incurred in connection with any contract;
4. Take such other action as Surety shall deem necessary to fulfill its obligations under any Bond.

DCN:11200710113218604001080460   Received Date:10/11/2007

Undersigned waive all notice of such default, of the payment of any claim or of the making of any loan to Contractor by Surety. Should Undersigned learn of any claim or suit against Contractor, for which Surety may be held liable, Undersigned shall give prompt notice to Surety of such claim or suit.

Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

**SECURITY TO SURETY:** As collateral security to Surety for the agreement of the Undersigned to repay all loss and expense to Surety, the Undersigned:

1. Assigns to Surety, as of the date of execution of any Bond, and grants a security interest to Surety in all rights of the Contractor in, or in any manner growing out of:
    a. Any Contract or modification thereof;
    b. Any subcontract or purchase order and against any legal entity and its surety who has contracted with Contractor to furnish labor, materials, equipment and supplies in connection with any Contract;
    c. Monies, Contract Balances due or to become due Contractor on any Contract, including all monies earned or unearned which are unpaid at the time of notification by Surety to the Obligee of Surety's rights hereunder;
    d. Any actions, causes of action, claims or demands whatsoever which Contractor may have or acquire against any party to the Contract, or arising out of or in connection with any Contract including but not limited to those against obligees and design professionals and any surety or sureties of any obligee, and Surety shall have the full and exclusive right, in its name or in the name of the Contractor, but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of action, claims or demands;
    e. Any and all rights, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion of any bonded work;
    f. All monies due or to become due to Contractor on any policy of insurance relating to any claims arising out of the performance of any Contract or to premium refunds, including, but not limited to, builders risk, fire, employee dishonesty or workers' compensation policies.
    g. All supplies, tools, plants, material, inventory, and equipment (whether completely manufactured or not), wherever located, which have been or hereafter may be purchased, used, or acquired for use, entirely or partly, in connection with or to be incorporated into the matter that is the subject of any Contract; and
    h. All amounts that may be owing from time to time by Surety to Contractor or any of the undersigned in any capacity including, without limitation, any balance or share belonging to such Contractor or any of the undersigned or any deposit or other account with Surety, which lien and security interest will be independent of any right of setoff which Surety may have.

The Surety agrees to forbear exercising the rights granted to it in (a) through (h) until there is a Default under this agreement;

2. Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and authority in event of Contractor's default to:
    a. Sign the name of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of this agreement;
    b. Dispose of performance of any Contract by subletting it in Contractor's name or otherwise;
3. Authorize Surety to join any and all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Contractor;
4. Agree that all monies earned by Contractor under any Contract are trust funds, whether in the possession of Contractor or otherwise, for the benefit of, and for payment of Contractor's obligations for, labor, material, and supplies furnished to Contractor in performance of such Contract for which Surety would be liable under any Bond on such Contract, and the performance of Contractor's or Surety's obligations to any Obligee on such Contract;
5. Agree that this agreement may at any time be completed and filed by Surety in such a manner that it will qualify as a financing statement under the applicable provisions of any statute of any state which has adopted The Uniform Commercial Code, and that Surety may add such schedules to this agreement, describing specific items of security covered hereunder as shall be necessary under such statutes.

**GENERAL PROVISIONS:**
1. Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety even though any such assent by the Surety does or might increase the liability of the Undersigned.
2. Surety has the right to decline to execute, provide or procure any bond requested by Contractor. If Surety does execute, provide or procure the execution of a bid bond or proposal bond, or agrees or consents to provide such contract of suretyship, Surety retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid proposal or tender to which the bid proposal bond or agreement or consent to provide such contract of suretyship is given.
3. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation. The security interest, trust, and other rights granted herein will not be deemed a waiver of Surety's equitable subrogation rights or other rights, said security in rights being in addition to the rights of exoneration, subrogation, and other rights to which Surety is entitled to under law or in equity.
4. Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining, copying or reproducing them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.
5. The Undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).
6. Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.
7. In case the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.
8. Execution by Contractor or any of the Undersigned of any application for any Bond or of any other agreement of indemnity in behalf of Contractor, or the taking of indemnity of any other person by Surety with respect to any Bond of Contractor, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this agreement.
9. The Undersigned waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety under this agreement, at law or in equity, have been satisfied in full.

DCN:112007101132186040010800460   Received Date:10/11/2007

10. The rights and remedies afforded to the Surety by the terms of this agreement and the terms themselves may not be waived or modified orally and no written change or modification shall be effective until signed by an employee of the Surety.
11. This agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety.
12. All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes.
13. The Undersigned has relied upon its own due diligence in making its own independent appraisal of Contractor and its business and financial condition, will continue to be responsible for making its own independent appraisal of such matters, and has not relied upon and will not hereafter rely upon Surety for information. Surety has no duty to inform any of the undersigned Indemnitors of the financial condition or other affairs related to Contractor.
14. The Undersigned shall remain responsible to Surety under this Agreement regardless of any changes in the relationship of the Undersigned with Contractor.

TERMINATION: This agreement is a continuing obligation of the Undersigned unless terminated as provided in this paragraph. An Undersigned desiring to terminate liability as to future Bonds of Contractor must:
1. Give written notice to Surety at P.O. BOX 34526 Seattle, WA 98124-1526, by certified or registered mail, of such termination;
2. State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.
3. It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

After the effective date of termination, the Undersigned giving notice shall be liable hereunder for:
1. Bonds executed or authorized prior to such date, and renewals and extensions thereof;
2. Bonds executed pursuant to a bid or proposal bond executed or authorized prior to such date, and renewals and extensions thereof.

Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

EXECUTED this ___9___ day of ___April___, 2007

CL Carson, Inc.

Attest: _____
Chris Carson, Secretary

By: _____
Chris Carson, President

_____
Chris Carson, Individually

_____
Kellie Ann Carson, Individually

ALL SIGNATURES MUST BE ACKNOWLEDGED.

DCN:11200710113218604001080460   Received Date:10/11/2007

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Texas_
COUNTY OF _Travis_
On this _9th_ day of _April_, _2007_, before me personally appeared _Chris Carson and Kellie Ann Carson_, to me known and known to be the person described in and who executed the foregoing agreement and acknowledged that _they_ executed the same for the purposes, considerations and uses therein set forth as _their_ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

[SEAL: JENNA MARIE NASH / MY COMMISSION EXPIRES / MARCH 31, 2008]

Notary Public, resident at _____
(Commission expires _March 31, 2008_)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____
On this _____ day of _____, _____, before me personally appeared _____, to me known and known to be the person described in and who executed the foregoing agreement and acknowledged that _____ executed the same for the purposes, considerations and uses therein set forth as _____ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, resident at _____
(Commission expires _____)

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____
On this _____ day of _____, _____, before me personally appeared _____, to me known to be the (a) _____ of _____, the Limited Liability Company executing the foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said Limited Liability Company, for the uses and purposes therein mentioned and on oath stated _____ signed said instrument by authority of the Limited Liability Company's operating agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, resident at _____
(Commission expires _____)

## CORPORATE ACKNOWLEDGMENT

STATE OF _Texas_
COUNTY OF _Travis_
On this _9th_ day of _April_, _2007_, before me personally appeared _Chris Carson_, to me known to be the President and Secretary of _CL Carson, Inc._ the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that _he_ executed said instrument by order of the Board of Directors of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, resident at _____
(Commission expires _March 31, 2008_)

IF ADDITIONAL ACKNOWLEDGMENTS ARE NEEDED
USE S-802 (INDIVIDUAL) OR S-803 (CORPORATE)

[SEAL: JENNA MARIE NASH / MY COMMISSION EXPIRES / MARCH 31, 2008]

S-0002/SA 4/04

Page 4 of 4

LM 000196

**Safeco**                SIGNATURE ADDENDUM                Safeco Insurance Company
PO Box 34526
Seattle, WA 98124-1526

The signatures on this page are intended to and shall be a part of the Agreement of Indemnity given to the Safeco Insurance Companies on behalf of **C L Carson, Inc.**

_____ and dated _____ **April 9 2007**

and shall in no other manner alter, amend or interfere with the validity of said agreement or the obligations of any other signatory to said agreement.

We, the undersigned, acknowledge that we have read all the terms and conditions of the Agreement of Indemnity referenced above and fully understand the nature of this obligation.

Stuart Thomajan, Individually

All parties agree that microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes.

S-4574/SA 3/05                                            Safeco® and the Safeco logo are trademarks of Safeco Corporation
FRP


EXHIBIT B

LM000007

INDIVIDUAL ACKNOWLEDGMENT

STATE OF __TEXAS__
COUNTY OF __TRAVIS__ } ss

On this __27th__ day of __January__, __2009__, before me personally appeared
Stuart Thomajan
to me known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that __he__ executed the same for the purposes, considerations and uses therein set forth as __his__ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

_Penny M. Brewer_

(Seal)
PENNY M BREWER
My Commission Expires
March 24, 2009

Notary Public, residing at __AUSTIN, TEXAS__
(Commission expires __3-24-09__ )

All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes.

S-0802/GEEF 7/01

FRP

LM000008